UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

| | |
|---|---|
| RACHELLE CHAPMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>DELIGHT RESTAURANT GROUP LLC, and DOES 1 to 25,<br><br>Defendants. | Case No.<br><br>**NATIONWIDE**<br><br>**CLASS ACTION COMPLAINT** |

**NATIONWIDE CLASS ACTION COMPLAINT**

COMES NOW, Plaintiff RACHELLE CHAPMAN ("Plaintiff"), on behalf of herself and all others similarly situated, and asserts as follows:

**INTRODUCTION**

1. Plaintiff Rachelle Chapman, a person with a mobility disability who uses a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants Delight Restaurant Group LLC and DOES 1 through 25 (collectively, "Defendants"), asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendants collectively own, lease, and/or operate at least one hundred and sixty (160) Wendy's restaurants in the states of Indiana, Ohio, Michigan, New York, North Carolina, Pennsylvania, Virginia, West Virginia. Ms. Chapman's claims arise from her own experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at

places of public accommodation owned, operated, controlled, and/or leased by Defendants ("Defendants' facilities"), and from site investigations at five (5) of Defendants' facilities also finding excessive sloping conditions.

2. Ms. Chapman asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance policies, practices and/or procedures, which fail to ensure compliance with the sloping requirements of the ADA's implementing regulations. *See* 28 C.F.R. §§ 36.101 *et seq*.

3. The ADA expressly authorizes the injunctive relief aimed at modification of **existing** policies, practices, and/or procedures that Ms. Chapman seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…

42 U.S.C. § 12188(a)(2).

4. Based on the extensive factual investigation performed by Ms. Chapman's investigators, she believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that Defendants' existing internal maintenance policies, practices and/or procedures (discussed at ¶¶ 18-27 below) are inadequate and must be modified. 42 U.S.C. § 12188(a)(2).

5. Ms. Chapman brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within the Parking Areas of their facilities, and (ii) modify its existing policies, practices and/or procedures

to ensure that its facilities comply with the ADA's implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq.*

6. Consistent with 42 U.S.C. § 12188(a)(2), Ms. Chapman seeks a permanent injunction requiring that:

   a. Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

   b. Defendants modify its existing policies, practices and/or procedures to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

   c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for her or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## **PARTIES**

8. Plaintiff Rachelle Chapman is, and at all times relevant hereto was, a resident of Knightdale, North Carolina. Plaintiff is a person with a mobility disability. In 2010, Ms. Chapman suffered a spinal cord injury after an accident in a pool. Ms. Chapman was paralyzed as a result of her injuries. Ms. Chapman is a mom, blogger, model, and advocate for people with disabilities.

Ms. Chapman published her memoir "The Promise: A Tragic Accident, a Paralyzed Bride and the Power of Love, Loyalty and Friendship," in 2014. In 2017, Rachelle's story was featured on TLC's "Rattled: A Paralyzed Mother's Story."

9. Ms. Chapman is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

10. Defendant Delight Restaurant Group LLC is, and at all times relevant hereto has been, a Delaware corporation, doing business in Virginia, as the owner, lessee, and/or operator of dozens of Wendy's restaurants. Defendant Delight Restaurant Group LLC's principal place of business is located at 518 Las Gaviotas Boulevard, Chesapeake, Viginia 23322.

11. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 25, are unknown to Plaintiff at this time. Ms. Chapman will amend this Complaint to assert their true names and capacities when known. She is informed and believes, and thereon asserts, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences asserted in this Complaint.

12. Ms. Chapman asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint were the alter egos, affiliates, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single franchise group, and in doing the things asserted in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

13. Ms. Chapman is further informed and believes, and based thereon asserts, that Defendants collectively own, lease, and/or operate one hundred and sixty (160)[1] Wendy's restaurants in the states of Indiana, Ohio, Michigan, New York, North Carolina, Pennsylvania, Virginia, West Virginia, as described herein.

14. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

**Ms. Chapman Has Been Denied Full and Equal Access to Defendants' Facilities**

15. Ms. Chapman visited Defendants' facilities located at 1279 North Military Hwy., Norfolk, VA 23502, on December 31, 2024, where she experienced unnecessary difficulty and risk of physical harm exiting and entering her vehicle and navigating the facilities due to the unlawful sloping conditions in Defendants' purportedly accessible Parking Areas. Specifically, the parking facilities featured excessive sloping conditions which violated federal regulations, as set forth in more detail below.

16. Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities. Plaintiff often travels to the area at least once a month to visit her family who live in Virginia Beach. While she is visiting family, she also likes to shop in the area. On December 31, 2024, Plaintiff was traveling to the area to the nearby shops and stopped into the restaurant to pick up some snacks. During the visits to the area, Ms. Chapman intends to dine at Defendants' facilities due to the convenience of picking up food quickly for her journey. Furthermore, she intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

---

[1] Plaintiff is informed and believes, and based thereon asserts, that a set number of these restaurants were acquired from other franchisees that have existing obligations to remediate the facilities. Those restaurants are excluded from this lawsuit.

5

17. As a result of Defendants' non-compliance with the ADA, Ms. Chapman's ability to access and safely use Defendants' facilities has been significantly impeded and she will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination she has previously encountered there.

**Defendants Repeatedly Deny Individuals with Disabilities**

**Full and Equal Access to Defendants' Facilities**

18. As the owner and/or operator of their facilities, Defendants employ centralized policies, practices, and/or procedures with regard to the alteration, maintenance, and operation of their facilities.

19. Ms. Chapman is informed and believes, and based thereon alleges, that as Wendy's franchisees pursuant to franchise agreements, Defendants utilize an Operations Standards Manual (the "Manual") issued by the franchisor when the franchise disclosure document ("FDD") is signed. The Wendy's FDD that Defendants are subject to is similar, if not identical, to a previous version found publicly at https://www.restfinance.com/app/pdf/fdd/Wendys-2021.pdf. It is Plaintiff's information and belief that the 662-page Manual contains the franchisee's obligations regarding the required standards and specifications and the franchisee agrees to comply with the Manual. FDD, p.42. While the Manual is not available publicly, the FDD provides the Table of Contents. FDD, p. 456-477.

20. Pursuant to the FDD, Defendants are provided with the Manual and all the accompanying materials, that provide the standards that the franchisee is required to follow— containing "the standard operating procedures required of all Restaurants operating in the Wendy's system." FDD, p.42. Specifically, the FDD states, in relevant part:

<u>CONFIDENTIAL OPERATIONS STANDARDS MANUAL</u>

You must operate the Franchised Business in accordance with the standards, methods, policies, and procedures specified in the Manual. You will be given access to the Manual for the term of the Franchise Agreement upon completion by you and your management staff of Quality's initial training program to Quality's satisfaction.

. . .

**9. CONFIDENTIAL OPERATIONS STANDARDS MANUAL**

9.1. In order to protect the reputation and goodwill of Franchisor and to maintain high standards of operation under the Proprietary Marks, Franchisee shall conduct its business in accordance with the Manual[.]

FDD, p. 55, 100.

21. Pursuant to the FDD, Defendants are required to maintain the Restaurant buildings' interior and exterior in compliance with the maintenance policies, practices, and procedures related to "Daily Outside Maintenance." The FDD states:

Subtenant's obligation to maintain and repair includes specifically, but is not to be limited to, the maintenance and repair and/or replacement of the following: the foundations, roof, floor and structural portions of the walls of the Restaurant; parking lot; curbs; driveways; sidewalks; gutters; fixtures, facilities and equipment located on the Premises; heating, air-conditioning, electrical and plumbing systems; exterior and interior doors; windows and glass; signs and other equipment installed and used by Subtenant; any easements appurtenant to the Premises in accordance with the terms of such easements; and the keeping, maintaining and updating of a written or electronic log in a format approved by Sublessor documenting such maintenance records, receipts and any warranties related thereto and keeping the same available for periodic inspection by Sublandlord upon request.

FDD, p. 276.

22. Defendants are also required to "reimage 70% of their existing Restaurants by the end of 2022, 85% by the end of 2023, and 100% of their Restaurants by 2024. Under the franchise agreement (Exhibit B to this disclosure document), Quality requires that franchisees refurbish and remodel all of their Restaurants once every ten years, and again before renewal." FDD, p. 10.

7

23. The FDD further provides minimum requirements for any new build, remodel, and refresh of the existing facilities. FDD, p. 223-226. The FDD states "Franchisees are solely responsible for ensuring that the design and completed construction/alteration of their restaurants comply with the requirements of all applicable federal, state, provincial, or local laws, codes, and regulations, including those of the Americans with Disabilities Act (the "ADA") and all state, provincial, or local accessibility laws and requirements." *Id*.

24. Defendants are also required to enter into lease agreements containing specific terms setting forth, among other things, Defendants' obligations to comply with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace the parking lot, curbs, driveways, and sidewalks on the leased property. Plaintiff is further informed and believes, and based thereon asserts, that Defendants have entered into sale-leaseback agreements at several restaurants that are "absolute NNN" or "zero NNN" in nature—for a period of twenty years—meaning the lessee has absolute responsibility for maintaining all the features of the property and the landlord has no responsibility for such maintenance.

25. The FDD requires Defendants to designate an "Approved Operator" that supervises the operation of Defendants' restaurants within designated market areas. FDD, p. 209. The FDD states, "[a]t all times during the Term of this Agreement, the Franchise Group shall cause such an Approved Operator to (i) be employed on a full-time basis in connection with the Covered Restaurants in his or her DMA and (ii) have the primary responsibility and authority to control the day-to-day management and operations of each of the Covered Restaurants." *Id*.

26. Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, and/or procedures concerning their daily outside maintenance obligations, and obligations to maintain, repair, and/or replace features within

8

their Parking Areas, through a director of operations, who supervises area directors or regional managers, who in turn directly supervise district or general managers, and then individual restaurant managers. Plaintiff is informed and believes that these positions collectively constitute the "Approved Operator" charged with overseeing operations of Defendants' restaurants for compliance with Wendy's policies through regular and complete inspections of Defendants' restaurants.

27. Defendants' centralized maintenance and operational policies, practices, and/or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

28. On Plaintiff's behalf, field investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, and/or procedures are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the Parking Areas:

 a. 1279 North Military Hwy, Norfolk, Virginia

   i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

 b. 3100 Western Branch Road, Chesapeake, Virginia

   i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%[2].

 c. 60 North Broadway, Hicksville, New York

---

[2] Pursuant to the ADAAG 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, i.e., 2.1%. *See,* 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

        i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%[3].

   d. 1066 Independence Boulevard, Virginia Beach, Virginia

        i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

   e. 725 Newtown Road, Norfolk, Virginia

        i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

29. As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing policies, practices and/or procedures, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

## JURISDICTION AND VENUE

30. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

31. Ms. Chapman's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

32. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

33. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of herself and the following nationwide class:

---

[3] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10, i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

> All wheelchair users with qualified mobility disabilities who encountered excessive sloping conditions within the Parking Areas of any Delight Restaurant Group LLC and DOES 1 to 25 locations.

34. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

35. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

36. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

37. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and she has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

38. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## **SUBSTANTIVE VIOLATION**

## **VIOLATION OF THE ADA, TITLE III**

## **[42 U.S.C. §§ 12101, *et seq.*]**

### **(Against all Defendants)**

39. Plaintiff restates each and every assertion set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

40. At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of mobility. Accordingly, she is an individual with a disability defined by the ADA, 42 U.S.C. § 12102(2).

41. Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

42. Plaintiff is informed and believes, and based thereon asserts, that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

43. The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of its facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

44. The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that caused them to be readily accessible to and usable by individuals who use wheelchairs in the first instance and/or after that were not maintained or operated to ensure that they remained accessible to and usable by individuals who use wheelchairs.

45. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

46. Defendants repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify its existing policies, practices and/or procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

47. Defendants' conduct is ongoing and continuous, and Defendants' conduct has harmed Plaintiff.

48. Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and inflict injury upon Plaintiff and the class.

49. Remediation of Defendants' facilities is readily achievable and can be accomplished and carried out without significant difficulty or expense due to the straightforward nature of the necessary modifications. The necessary modifications are low cost, and Defendants have the financial resources to complete them.

50. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes her statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR DECLARATORY JUDGMENT AND PROSPECTIVE INJUNCTIVE RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, prays for:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to modify its existing policies, practices and/or procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of its facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing her counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' and monitoring fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f. The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: March 21, 2025                     Respectfully Submitted,

 /s/ Matthew B. Kaplan
Matthew B. Kaplan VSB #51027
**THE KAPLAN LAW FIRM**
1100 N. Glebe Rd, Suite 1010
Arlington, VA 22201
Phone: 703-665-9529
mbkaplan@thekaplanlawfirm.com
*Local Counsel for Plaintiff and the Proposed Class*

Jordan T. Porter
*To be admitted pro hac vice*
**NYE, STIRLING, HALE, MILLER & SWEET, LLP**
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: 805-963-2345
jordan@nshmlaw.com
*Attorney for Plaintiff and the Proposed Class*